Good morning. May it please the court, Eric Parzinello on behalf of the appellant Trident Fasteners Inc. I'd like to reserve three minutes for rebuttal time. First, thank you to the court and to this panel for allowing the opportunity to present oral argument. Trident, or TFI as referenced in the appellate briefs, brought a complaint which was dismissed by the Eastern District of Michigan after a motion for judgment on the pleadings. Trident requests that this court, in its de novo review, reverse that decision and remand the case to the District Court. District Court erred in its application of Michigan law to the facts contained in Trident's complaint, which must be assumed to be true. This case doesn't fit into the box of cases into which L.E. Selective would like to put it. And that's because of the unique factual nature of what happened in this case, which I'll briefly summarize. Trident is a supplier of automotive parts, which are ultimately used by OEMs. Tenneco Company was and remains Trident's largest customer. Trident supplied Tenneco with parts which are first heat treated by another company, Elm Plating. That heat treatment failed. Can we just cut to the facts of the insurance dispute itself? Sure. We submitted a claim on October 31st, 2018, for the damages which Tenneco demanded from Trident. There was a policy number, or there was a claim number assigned, and then there was silence for four months. In February of 19, Trident again contacted Selective to get its coverage position and to engage Selective's participation in a settlement. February 26, now four months after we first contacted Selective, Selective assigns a new adjuster to the case. We provide additional substantial information to Selective, and then we hear nothing again. In April, Trident again contacts Selective, requesting consent for Trident to enter into settlement negotiations. And Selective again requests additional information, which Trident provides on April the 25th. Silence then occurs until May 10th, when Selective reverses course, denies consent to enter into any type of settlement negotiations, and we hear nothing from Selective after that. On June 28th, for business reasons, Trident settled its dispute with Tenneco. Well, it sounds like you have a situation of a customer of your client. They didn't want to damage that relationship by requiring them to bring a lawsuit, so they decided they would settle short of a lawsuit. Is that fair to say? That's fair. They wanted to maintain the... But the problem is, from the insurance company's perspective, they claim that there's a policy that says unless you are actually sued, we don't have a duty to defend you or to engage in settlement talks. They don't have a duty to defend, but they have discretion to enter into those settlement talks. But by discretion, that means they could decide not to enter into the settlement talks. That's their position. You're saying that they don't have discretion. I'm saying that they have that discretion, and once they have that discretion, which is in the contract, they are under a duty to exercise that discretion in good faith. Our case doesn't fit into the other good faith and duty to defend case. What's your evidence of bad faith? Our evidence of bad faith is the unreasonable delay from giving us any direction from October 31. So it's bad faith to wait until there's an actual lawsuit filed, which would give rise to something more than just an inchoate duty to defend or to pay a claim? There would be bad faith if they sit idly by despite repeated requests. Well, it doesn't sound like they sat idly by. They actually told you that they weren't going to give you consent. So they did do something. They told you they weren't going to enter into settlement negotiations. That's accurate. So at that point, it seems like you all should have understood you're not going to get their consent. You'll have to go to your customer. It's not a good situation, but you tell your customer, look, you're going to have to sue us. And that occurred seven months after we first presented the claim. But then they eventually did provide us a letter, a reservations of rights letter, on June 28th, which coincidentally was the same day that Trident settled with Tenneco. So they did determine that subject to the reservations of rights, they would provide counsel to defend or engage in negotiations. So you had the suit, but you never got consent. You never got the consent to the settlement from the insurer. I mean, eventually there was a suit filed before the settlement was entered into. Is that correct? There was never a suit. There was never a suit. Yeah, I thought that was the point. Correct. Yeah. Yeah. Go ahead. I'm sorry. In these communications, before you settled, did you send a letter explaining that you had this opportunity to settle now and felt it was necessary and that you would treat the lack of cooperation as bad faith or anything like that? That is not contained in the complaint. There were substantial communications with Selective responding to information that they requested, both in February and in April. Whether that amounted to a threat on our part of bad faith, I don't believe so. Again, that's not part of the complaint. But Selective was clearly on notice of the unique situation, which was an existing customer, a largest customer, and an opportunity to resolve the case prior to any lawsuit being filed, and really the necessity, as Judge Bush noted, that we do that without a lawsuit. So, again, the basis of Trident's claim rests both in the delay of Selective to respond and to try to attempt to assist us in resolving this with a longstanding and largest customer, as well as that knowledge that this unique situation was presenting itself to Trident. I understand the business difficulty of your client. I guess what I'm struggling with is what legal basis do you have to say that there was a duty that arose? And I know that there's this Higgins case from Michigan that involved a notice of noncompliance from a government agency. Is that your best case? That and the analysis in the Stryker case cited in our reply brief, the Higgins case did involve what the court there found to be the functional equivalent of a lawsuit with the MD&R letter. But its holding with respect to the duty to investigate and deciding how to handle the claim specifically excluded the environmental component. The citation to that case specifically says that insurance companies have already undertaken this duty in circumstances other than environmental. So that particular holding and the analysis of a duty to investigate and a duty of good faith, while it's contained in a case that discusses an MD&R letter, does not diminish the effect of that analysis and the holding. What about the Stryker case that you mentioned? The Stryker case, although that involved an insurance company's decision to pay one claim over another, and there was a good faith analysis, which goes back to the discretion portion of my argument, which is once an insurance company has that discretion, there is a good faith requirement. In that case, Stryker said that there's no Michigan case law expressly holding that an insurer has a duty to act in good faith when deciding which claim to pay first, but recognizing such a duty is consistent with longstanding Michigan precedent that a duty of good faith is implied in most contracts. The district court's decision was that that duty of good faith is not triggered until there's a lawsuit filed, and that would mean that an insurance company from inception of the contract through its termination, unless there's a lawsuit filed, has absolutely no duty of good faith to its insured, and that's just not the case. It doesn't make sense because the contract begins both parties' duties of good faith. Exactly, and I'm back to my original question, I guess. Exactly what is the evidence of failure to exercise or to operate in good faith here that you're claiming? Because as I understand what you're saying, it's just that they waited too long to do what you think they should have done. It's five prongs of what we said was bad faith, unreasonable delays in investigating, refusing to participate in attempting to resolve the claim, unreasonably withholding consent and really delaying consent in participating in settlement discussions until, again, coincidentally, the same date. Now, can you identify the point at which, in this whole time frame, the point at which you say that this duty, all of these duties, actually arose? Day one when they first heard that there was a potential problem? Or two months in? When exactly did they have to do the things that you say they should have been doing? Well, the duty arose on the date that the policy commenced. Their breach of duties, in this case, we believe occurred at the date that the policy commenced. Well, they couldn't have had a duty to investigate the day the policy was erupt. Not a duty to investigate, but a general duty of good faith in performance of the contract. Well, sure, but so exactly at what point did the first thing happen that they should have? The first point at which you say they should have done something, and I'm talking now about a time frame because basically everything you're complaining about, as I understand it, is premised on delay. At least by February of 19, when we contacted them, we'd initiate, re-initiate contact with them, because for four months we had heard nothing from them. So at least by February of 19, when we take the initiative to contact them and say, what's going on with this claim, here's our situation with our longstanding customer, what is going on? That was the point where they assigned a new adjuster, frankly, perhaps realizing that the prior adjuster did nothing for four months. So between the other, again, the other case that the district court relied on, which is distinguishable, is the Duracon case. And the Duracon case is distinguishable because the facts of this case simply didn't apply there. There was a request for coverage, there was an immediate denial of coverage, and the insured decide to unilaterally settle the case without the insurance company's consent. Counsel, do you want to go into your rebuttal time? No, I'm all set. Thank you. Thank you. Good morning. May it please the Court, Jeffrey Gersh on behalf of Selective. I echo my friend's thankfulness for the court scheduling oral argument. We appreciate that. The district court correctly granted judgment on the pleadings in favor of Selective because the court correctly recognized that the relief Trident seeks is plainly precluded by the voluntary payment provision. And this is a very straightforward application of that provision. They've never argued that it doesn't apply. Counsel, okay, so the coverage provision is not limited to suits, but you do have provisions that apply to voluntary settlements without consent. It can't be the case, I don't think, that the insurance company can just refuse to settle any claims and then the insured has to just go to judgment. We know that there are rules about that. So do you maintain that under all circumstances a suit is necessary? Yes, essentially yes, Your Honor. And I think this is the fundamental problem with their position is they think of this as claim insurance, but that's not what it is. It's liability insurance for suits. It specifically says we will pay those sums that the insured becomes legally obligated to pay as damages. That also didn't happen. Wait a second. I mean, if you go to Section 4.2 of your policy, it says duties in the event of occurrence, offense, claim, or suit. It's more than just suit, isn't it? Well, what this says, the insuring agreement says we have the duty to defend, but it also says they have the right to defend. They are entitled to defend a lawsuit. And in terms of the investigation, what it says is we may at our discretion investigate any occurrence and settle any claim or suit that may result. And my friend conceded that they don't have a duty in this regard. They have the discretion to investigate. But let me go back to their complaint because this is a more fundamental problem that I think the district judge recognized that they have not accounted for. Their complaint contains only one count. It's for breach of contract. That's all it is. They don't plead a bad faith claim. They don't even plead a breach of the implied covenant of good faith and fair dealing. What they say is in paragraph 48, this is in their one and only count for breach of contract, and I'm reading their complaint. The policy obligates selective to pay TFI for the damages resulting from the defective fasteners, including Tenneco's claims. That's incorrect, and the judge recognized they do not have a duty to pay that because it is in straightforward violation of the voluntary payment provision. All this talk about the supposed failure to investigate quickly enough, they don't even allege that this caused any damage. There aren't any facts in the complaint that say because you delayed, therefore we entered into this settlement that was worse than it otherwise would have been. They don't even allege that. In fact, they allege the contrary. They allege that they entered into a settlement with Tenneco for business purposes that was dramatically lower than the claim that was made by Tenneco. There's no allegation in the complaint that our supposed breach of a duty to investigate, which is not even alleged as a freestanding count, there's no allegation that that caused any damage, that that caused this to happen, which is a fundamental problem with their complaint. So it caused it to happen in the sense that they were forced to pay it themselves when they had published. Well, they chose to pay it themselves. They weren't forced to do anything, and they don't even allege really that they did. Let me ask you a hypothetical. Let's say you have a situation similar where there's really no question about the company's liability in terms of the product, and for whatever reason the claimant really is in need of money, and there's an opportunity to settle a claim that is clearly going to be a $10 million claim for $2 million. And they call the insurance company in their letters, and they tell them this, and the insurance company just refuses to participate. Is there any duty at that point where the facts are clear? What if the policy is only for five years? First of all, I want a two-part answer. The straightforward answer, Your Honor, our position is no, there is not a duty. They are entitled to await a lawsuit against their policyholder. They have a right to defend. That's number one. But number two, there aren't any facts in the complaint in that regard. And I know that I'm not trying to dodge the hypothetical, but I think it's important for this case to point out that there is no allegation to that effect. But the short answer, Your Honor, is that the insurer is entitled to await a lawsuit against its policyholder, and then it does so at its peril. The insurer is not without risk here. If the insurer forces a lawsuit against its insured, then if it has a duty to defend, it has to do that. And then if it doesn't settle within policy limits and the policyholder gets popped above limits, then the insurer is potentially liable for a bad faith failure to settle within limits. So the insurer has exposure, no question about it, in the bad faith context. If it doesn't cooperate and it forces a lawsuit against its insured that results in an over-limits judgment, that can happen, and that is the insurer's risk. But it's the insurer's right to defend the lawsuit. That's the fundamental problem with their argument. They entered into a settlement without our consent. We told them you don't have our consent, and they did it anyway. And that is a straight breach of the provision that's enforceable under Michigan law and is applicable. And let me just go back to the complaint because, as I said, it doesn't allege a claim of bad faith, and it doesn't allege even a claim of breach of the implied covenant of good faith and fair dealing, which I think is important, but let me add this. This is what the implied covenant of good faith and fair dealing is, and I'm quoting from their own brief on page 14. They quote, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. That's what the implied covenant of good faith and fair dealing is. You can't do something that will destroy their rights under the contract. Well, there isn't any allegation that Selective did anything like that. I mean, an example of that would be if, say, Selective went to Tenneco and did something that forced Tenneco to file a lawsuit that wasn't covered. I mean, that hypothetically could result in harm to Trident. But nothing like that happened. The only allegation they make is that they delayed, and they don't even connect it up to any harm caused by the delay. And then without any allegation of harm caused by the delay, they went ahead and entered into this settlement on their own, knowing they didn't have our consent, in violation of the voluntary payment provision. And counsel conceded today, Judge Bush, I think in response to your question, it was done for business purposes. Your Honor, you hit the nail on the head. And if you look at COIL Anodizers, the Michigan case specifically says an insurer that enters into a settlement without consent for business purposes, they can do that, but they do it at their own expense, because the insurer has these rights under the policy. Let me just talk briefly about the case law, because I think some of the cases I think the Court has to take with a grain of salt, they identify DICTA in a case here and there. Your Honor, Judge Bush mentioned Higgins. Higgins, I think, does not reflect Michigan law. It's more than 30 years old. The issue in Higgins was whether a demand letter by the DNR constitutes a suit. That was the only issue. The District Judge recognized there was no Michigan law in that and held that it did. And that was the end of that. That was the holding in the case. The Court then went on to talk about certain things, and there's some DICTA in there that is not connected to any Michigan law that I know. So I would just urge the Court to proceed with caution with regard to the Higgins case. That is the case they rely on the most. But all they do is they pluck statements here and there out of it regarding an insurer's duties in connection with investigation. But there isn't any duty to investigate in the policy, and there's certainly no duty, as counsel conceded today, and there was no breach of the duty to investigate that caused them any damage. What is your best authority for saying that you have to have a lawsuit in order for a duty to arise? Probably Tenneco or Coil Anodizers. The Tenneco case and Coil Anodizers are two Michigan Court of Appeals cases that involve the voluntary payment provision. Counsel mentions the Stryker case. There's nothing in his reply brief that talks about how Stryker applies here. That's just another example of a statement plucked from Stryker about general duties that an insurer has. But even that, again, is in the context of lawsuits against the insured. But, yeah, it's important, I think, and I don't mean to be repetitive, but I think it will be helpful for the court to focus on the complaint, the allegations of the complaint, there's only one count, breach of contract, the judge correctly granted judgment on the pleadings based on their own complaint. And their criticism of the district court opinion I think is unfair given what they pled in their complaint and what they didn't plead in their complaint. And then secondly, more fundamentally, the insurer absolutely is entitled to await a lawsuit and it is not required to consent to a settlement of a claim where there's no lawsuit. That's a straight application of Coil Anodizers and Tenneco. The district judge got it exactly right and this court should affirm. I'll be happy to answer any questions if the court has any, but if not, I think I will sit down. The district court's decision, though, was more addressed to the law than the inadequacy of the pleading, right? Well, I don't know about that. I mean, the pleading is not very detailed. The pleading is that the theory of recovery, the only theory of recovery, is that Selective has to pay the settlement that they entered into without Selective's consent. I mean, that's what the complaint says. I think you're right, Judge White, that the court didn't elaborate on what else was in the complaint because there isn't anything else in there. I mean, the district judge could have put more detail and opinion about how, for example, there's no allegation that the alleged failure to investigate quickly caused any damage. I mean, that's certainly true. There's no allegation. The district judge didn't really elaborate on that, but I don't think she was required to either. Does that answer your question, Your Honor? Yes, it does. Thank you, Your Honors. If the court has any questions, I'll answer them, but otherwise I'll waive the rest of my time. Any questions? No. Just a brief rebuttal. Well, the complaint speaks for itself, but there are clear allegations that Selective had a duty of good faith. There are allegations that Selective acted in bad faith at paragraph 47, and there's the allegation that was addressed early in the argument regarding the fact that Trident did settle for an amount significantly lower than Tenneco's initial claim. The complaint, the pleading was proper. It properly alleged a breach of the duty of good faith, and Trident requests that this court reverse the decision of the district court. Thank you both. The case will be submitted. Thank you.